Scott-, J. The only question presented by the record is, whether or not the court below erred in striking out the several pleas in abatement filed by the defendant below, after the execution of his bond under the provisions of the 13th section of the Statute of Attachments, and the consequent release of the property attached. And as the record presents no other apparent reason for the action of the court below, on the plaintiff’s motion to strike out these pleas in abatement, than the apparently supposed legal effect of the execution oí this bond upon the defendant’s right to file dilatory pleas, we will examine somewhat at large so much of the Statute of Attachments as seems- connected with the solution of the question before us. In the case of Delano et al. vs. Kennedy, reported in 5 Ark. 457, the principle involved was decided by this court, but as there was a dissenting opinion in that case by an eminent jurist, and the correctness of the decision of the majority of the court has been strongly questioned, it will not be inappropriate to review the doctrines of that case, which will necessarily be done in presenting our views on the question now to be decided. The proceeding authorized by the Statute of Attachments, chap. 13 of the Revised Statutes, is, in its inception, a compound proceeding, combining a proceeding in rem with a proceeding in personam, each having a distinct identity, but liable to be transformed, at any time before final judgment, into a proceeding solely in personam. And as a whole is founded upon the declaration, bond, affidavit and writ in harmonious combination. Should this foundation be defective, as it would be in case the affidavit, the bond, or the writ should not be in conformity with the statute, or either should vary, the one from the other, in so much as to disturb the harmony of the whole as one suit, the entire proceedings, if appropriately assailed, would necessarily fail, because being unknown to the common law and a mere creation of the statute with prescribed pre-requisites and fixed limits, it must necessarily stand or fall upon its conformity or non-conformity with the terms upon which, by the statute, it is permitted to be set on foot and have its being. Harsh and effective in its operation and so easily perverted to purposes of oppression, the legislature have wisely attempted to restrain its potency within its legitimate sphere of action, by requiring as a pre-requisite, a prescribed affidavit under the pains and penalties of perjury, and an ample bond, with security for the indemnification of the defendant, to be delivered over to him for suit, by order of court, whenever it shall be shown that the debt or demand, proceeded for by the plaintiff, was not really due, or it shall appear that the writ was not “ issued in accordance with the true intent and meaning of the statute.” Secs. 3, 5,50. The original of this extraordinary remedy (so often held by all, or most of the American courts to demand a strict construetion in furtherance of the views of the legislature in placing these unusual restraints upon its use, and in confining it, thus trammeled, to specified cases only,) is to be found among the immemorial custioms of the city of London, designated as the “ Custom of Foreign Attachments,” an account of which is given in Bacon’s Abridgement and in other old books. And it will be found that, although our statute has, in establishing the substance of this ancient custom, introduced several modifications, it has at the same time preserved all its strong and distinguishing features. One of) these modifications is the introduction of a new rule, less onerous upon the defendant, for making resistance to these proceedings; and another, is a restriction as to the time when the attachment may be dissolved. And both of these modifications are effected by the provisions of the 15th and 29th sections of our statute. By the “ Custom,” a defendant could not, in any case, make defence without first giving bail to the action: by the 29th section, as well as by the 15th, he is allowed to do so without bail. So by the Custom, the defendant could, at any time within a year and a day, appear, put in bail to the action, even although after judgment and execution against the garnishee, (if at that time satisfaction had not been entered of record,) and by this means dissolve the attachment, and thus authorize the defendant or garnishee, as the case might be, to have (rover or replevin for the goods attached, if they were not forthwith delivered. But by section 29 he can only dissolve the attachment, as to time, “before judgment entered or jury empanneled,” not afterwards; and as to means, he is allowed to effect this dissolution by successful exceptions to the affidavit, provided he will first “ appear and plead to the plaintiff’s action.” Thus by the 29th section the defendant is allowed, not only to appear and make his defence without bail, as he is also allowed to do by the 15th section, but he is authorized to set up abateable matter (by objection to the affidavit) in an extraordinary manner (by exceptions) instead of in the ordinary manner, by plea in abatement. And thus it is plainly intended to confer upon him extraordinary means for putting an end to so much of the proceedings, as is a proceeding in rent, leaving the entire proceedings themselves to be overthrown only by the ordinary means allowed and used for the overthrow of “ other suits at law,” as authorized by the 15th section. And contemplated that this extraordinary means will be used only in that condition of the case in its progress through the court, when, by the rules of law, dilatory pleas could be no longer made available. And designing that when by default of the defendant, the case was in this condition, he might then, upon the terms of pleading to the merits, still have the privilege of abating, by means of successful exceptions to the affidavit, the attachment only, for an objection, which, if taken in time by plea in abatement, would have overthrown the entire suit. This is evident from the consideration that, by the 15th section the defendant, without giving bail, has the right secured to him of pleading to, and defending the compound proceeding “ as any other suit at law,” and that it could not have been designed by the 29th section to impair this right. Moreover, to apply the principles of strict construction, which are usually applied to remedies derogatory to the common law, to provisions of the statute for resistance to this class of remedies would be felo de se, and an utter perversion of this conservative doctrine. And inasmuch as proceedings under the statute of attachments, for all purposes perhaps, and certainly for all purposes connected with resistance to their progress through the courts, cannot bo considered in any other light than in that of suits or actions at law, set on foot by the legislature, not in a condition of isolation, but directly in view of, and in harmonious combination with our entire system of jurisprudence as a whole, of which it was itself to form a part; necessarily, like all other remedies, its want of propriety or efficiency must be made to appear in the regular established course of pleading-applicable to all other actions at law, unless in points where the statute, which gave it existence, otherwise provides. It is safe then to conclude that the legislature designed by section 29 to confer benefit upon the defendant, and not impair or take from him privileges and rights, which had been conferred upon him either by the previous sections of the statute, or by its necessary connexion with the general law of the land. It will not then be unimportant to inquire in what predicament or condition the case can be placed, in its progress through the court, to make this statutory mode of setting up abateable matter in the manner authorized by sec. 29, of any value or benefit to the defendant when used upon the terms prescribed — that “ of appearance and plea to the plaintiif’s action.” We have seen, under the general principle of law just referred to in connection with the 15th section, that, without any aid from section 29, the defendant would have the undoubted right to plead any abateable matter within the time and within the rules fixed by law for other actions at law, and that such matter, pleaded in •due form and apt time, would go to the entire proceedings, and .that section 29 was not designed to impair or take away any of ■these rights and privileges, but confer upon the defendant a new facility or means of abating, not the entire proceedings, but so much only of the proceedings, as is a proceeding in rem. What then is the practical benefit designed to be conferred on the defendant? and in what predicament or condition of the ■case, in its progress through the court, will the benefit, conferred on him by section 29, be of avail to him upon the terms annexed to its use ? Much light will be shed upon this question by again referring to the “Custom of Londoh,” as to the time when the defendant could come in and dissolve the attachment, (which it will be recollected was even after judgment and execution issued) in connexion with the phraseology of section 29, “before judgment entered or jury empanneled;” and also similar sections found in statutes of other States of this Union, where the phraseology is most usually “ before final judgment entered or writ of inquiry executed.” In which predicament the defendant is allowed to “ plead to issue, so that the plaintiff shall not thereby be delayed of his action.” All designed, as section 29 evidently was, to allow of the dissolution of the attachment at all times up to the time of final judgment, upon some terms or other, but not to allow of its dissolution after that period, as the Custom of London did to the great delay of the plaintiff. The declared great object of the Custom of London and of the American Statutes of Attachments being to compel the appearance of the defendant, or, more accurately speaking, as to most of the American Statutes, to obtain jurisdiction of the person of the defendant, the policy of permitting the dissolution of the attachment at any time before actual satisfaction on the record, if within a year and a day, in the one case, was productive of the mischief of great delay to the plaintiff, which it has been the objeefof the American Statutes to remedy by establishing a policy to allow of its dissolution only before final judgment upon terms more or less onerous to the defendant. This being the object and policy designed to be established, it is manifest that the phrase, “ at any time before judgment shall be rendered against him,” used in section 13, and the phrase, “at any time before judgment entered or jury cmpanneled,” in section 29, should be taken and construed to mean final judgment as contradistinguished from interlocutory judgment, as such doubtless was the sense in which they Avere used by the legislature. Both sections having been manifestly designed for the benefit of the defendant, as an amelioration of the effects of a harsh remedy, so liable to abuse, consequently should have the most favorable construction for the defendant in advancement of the remedy and suppression of the mischief. And this construction being admitted, it follows that the predicament or condition of the case, in its progress through the court in which the benefit, conferred upon the defendant by section 29, can be made available to him, in case he will “ appear and plead to the plaintiff’s action,” is when judgment by default has been rendered against him and the case stands upon a writ of inquiry. In that predicament the case is beyond the reach of dilatory pleas, because as these pleas are never favored by the courts, a judgment by default Avill never, according to the settled rules of practice, be set aside but upon the condition that the defendant Avill plead, not a dilatory plea, but a plea to the merits. It results then that in a proceeding by attachment under our statute, the defendant, under the provision of the 15th section, may, without giving bail, appear and defend an action commenced by attachment in the same manner in every respect as an action commenced in the ordinary way by declaration and summons, having the right to plead in apt time and in appropriate order all dilatory pleas and pleas in bar. And that the effect of section 29 is not to impair, to any extent, aiijr of these rights derived either from the statute or the general law of the land, but to super add to them the right to have an interlocutory judgment, rendered by default, set aside (on condition of pleading instanter to the merits) at any time in the progress of the case before jury empanneled to assess the damages, and that, after pleading to the merits in such case, he may file exceptions to the affidavit, which if sustained, will have the effect to dissolve the attachment, restore the property if still in custody of the sheriff, discharge all garnishees, cancel all bonds given on the part of the defendant either by the defendant or garnishees, and discharge all rules entered Against the sheriff or other officer touching the proceedings in rcm. Now, these being the rights and privileges of a defendant who defends without giving bail, does the execution of the bond with security provided.for by the 13th section, to any extent impair these rights ? It is insisted that it does, and urged that the condition of the bond, that the defendant “will appear to and answer the plaintiff’s demand at such time and place as by law he should, and that he will pay and abide the judgment of the court, or that his security will do the same for him,” has the legal effect to estop him from pleading any dilatory plea and to place him under imperative obligations to plead only to the merits. It is supposed that it would be difficult to show that the doctrine of estoppels, which the courts have ever been most unwilling to extend, because of its tending directly to prevent the investigation of the truth, was ever carried thus far or held applicable in the most remote degree to a case of this kind. And if it were necessary, by reasoning and authority to combat this position of tbe plaintiff it might, perhaps, be sufficient to present the consideration that the defendant’s undertaking by his bond, so far at least as appearance and pleading are concerned, is an executory and not an executed covenant, and refer •to the case of Gibson vs. Gibson, 15 Mass. Rep. 106, and the cases there cited; but it is not deemed necessary to discuss this doctrine, as it will appear in the sequel, that the defendant does not violate the condition of his bond, when he pleads a dilatory plea at the appropriate time. His undertaking “ to appear and answer the plaintiff’s demand,” is not an absolute and unqualified undertaking, but it is to do so “ at such time and place as by law he should” — what law? Tho Statute of Attachments alone? By no means; but the law of the land of which the statute of attachments is a component part. When, then, by the law of the land — giving to the phrase “ plaintiff’s demand” its most favorable signification for the plaintiff — is a defendant bound to answer to the merits of a cause ? Certainly not until such time after the plaintiff is himself rectus in curia (either by his own act or that conjoined with the waiver of the defendant) as his cause “may be called in its regular order on the docket,” in case the process has been served at least thirty days previous to the return day thereof, or on or before the third day of the term, if the term so long continue, when the process has been served more than fifteen and less than thirty days before the return day thereof. But the plaintiff must be rectus in curia, either by his own act, or that conjoined with the waiver of the defendant, at the time of the calling of his cause in the one case, or at the day specified, or the defendant would not then bo bound to plead to the merits: as for instance, if the plaintiff had not then a declaration in, the defendant would not then be bound to plead to the merits. Indeed, upon the authority of King’s Bench by Lord Mansfield, in Douglass vs. Green, 2 Chitty) Rep. 7, he would not only, in such a state of the case, be not bound to plead, but would actually have no right to plead any plea, and even a plea in abatement filed under such a state of facts would be, in the language of that eminent judge, “ no plea at all, because there was no declaration in.” Then, will the bond in question, executed under the provisions of the 13th section of the statute, be such a waiver of all dilatory objections to the plaintiff’s case as to place him rectus in curia, or, in other words, will it place his case on such high grounds as to be quit of this class of objections, although taken in apt time and by' appropriate pleas ? To determine this question in view of all the principles we have touched, it will be necessary to analyse this bond and fix its legal character. The first clause of the condition of this bond will be found substantially identical with the condition of a bail bond to the sheriff, as is shown by the following extract from a bond of this kind taken from Burns’ Law Dictionary, to wit, “ The condition of this obligation is such that if the above bound E. F. do appear before our sovereign Lord the King, at Westminster, on the morrow of the Holy Trinity, to answer J. K. gentleman, of a plea of debt of 100 pounds, then this obligation to be void.” And the second clause will not be found materially variant from the condition of the recognizance of bail taken above by the court, as will be shown by the following extract from such a recognizance, taken from the same author, to wit: “ Upon condition that if the defendant be condemned in this action, he shall pay the condemnation of the court or render himself a prisoner in the fleet for the same, and if he fail so to do, C. D. and E. F. will undertake to do it for him.” It will therefore appear that the bond in question is essentially an. instrument of bail, which accomplishes substantially all the ends that were accomplished in England, by the taking of the bail bond below together with the subsequent filing, entering and perfection of bail to the action above. And that when a party defendant in an attachment has executed the bond authorized by the 13th section, he has, in legal effect, certainly done nothing more than a defendant did in England in an ordinary action, when he first executed a bail bond below to the sheriff, and subsequently appeared, as he had covenanted to do, and entered into a recognizance of special bail to the action above and perfected appearance there by the justification of his bail. Now, did all this have the effect in England to take from the defendant his right to plead dilatory pleas, if presented in apt time and due form, and oblige him to plead to the merits ? The following authorities show that such was not the legal effect. In Bacon's Abridgement, Abatement O, it is said, “ If the defendant put in bail within four days and give notice of justifying them, he may then plead in abatement, and his plea will stand good should the bail be ultimately perfected.” But the defendant cannot plead in abatement before the plaintiff has declared nor before the defendant has put in special bail or has appeared. In the case of Wakefield vs. Marden, 2 Chitty Rep. 8, a plea in abatement was filed within the time allowed for their being filed, but without the defendant’s having first entered an appearance, and judgment was signed for want of a plea. Upon a rule to set aside the judgment, “Lawes admitted that the plea was regularly pleaded, but urged that the defendant had not appeared.” “Espinasse, contra, urged that the plea was pleaded in pei’son, and that it was unnecessary that an appearance should be entered.” “ Sed per curiam: There is no such distinction. The defendant must in all cases appear, and therefore the rule must be discharged.” In the case of Saunder vs. Owen, 2 Rowland & Ryland's Rep. 252, the plaintiff having declared de bene esse, and demanded plea, the defendant pleaded in abatement within four days, but at that time had not put in special bail; he did, however, after-wards put in and perfect special bail; but notwithstanding this, the plaintiff treated his plea as a nullity and signed interlocutory judgment. ReadeR moved to set aside the interlocutory judgment, and contended that the demand of a plea waived the bail, and that the time when the bail was put in and perfected, must have reference to the day when it ought to have been put in by the rules and practice of the court.” “ Waleord, contra, urged that the defendant could not be considered as in court, until bail had been put in and perfected, and therefore he could not take advantage of any premature step of the plaintiff until he himself was in court.” “The court was of this opinion, and held that the interlocutory judgment was regularly signed.” In the case of Dimsdale vs. Neilson, 2 East 406, after the putting in and justifying special bail in the country, the defendant on being served with a declaration, filed a plea in abatement: noti.ee of exception was given on the following day, in consequence of which, the bail afterwards justified in court, but notwithstanding the bail having justified, judgment was signed by the plaintiff on the day after the justification as for want of a plea. A rule nisi was obtained to set aside the judgment and to stay proceedings. “Lord Ellenborough, C. J.: the defendant seems to me to be in court after he has put in bail, unless it turn out that the bail, on exception taken, are afterwards set aside. But if the bail are ultimately accepted, the defendant has done every thing which it was in his power to do, and therefore ought not to be deprived of any benefit which the law gives him.” Lawrexce, judge (in the same case,) said that in the case of Vernon vs. Calvert, the pica must have been a plea in bar, pleaded after the bail had been excepted to, and it would be impossible, if the plaintiff delivered his declaration conditionally, and delayed excepting for four days, that a defendant could ever plead in abatement, as by the rule of court he must plead in abatement within that time. ' In first Tidd's Practice, 587, it is laid down as a “ general rule that if the defendant plead before the bail are perfected, his plea will be considered as a nullity, although the bail afterwards justify. But in a country cause, if the defendant put in special bail in time, he may plead in abatement, though the bail be not perfected until after the four daj’-s, if they be ultimately perfected.” And in the case of Hopkinson vs. Henry, 13 East 170, it is said to be “the same whether in a town or country cause.” The perfecting of bail to the action having no such effect in England, it would not be unsafe to conclude upon these authorities, that the bond' in question, which we have seen is essentially an instrument oí bail, can have no ciTect to impair any of tlxc defendant’s rights of defence, when presented in apt time. And indeed it would seem impossible that it could be otherwise, for at most the execution of this bond could not be considered as any thing beyond an appearance in proper person, as special bail was considered in England by the fiction of law, that at the time of filing special bail to the action, the defendant made bis actual appearance in court. And as bail below never contemplated this fictitious actual appearance in court, it was never regarded as equivalent to technical appearance, and hence upon forfeiture of a#bail bond, the defendant, then being in default, was not afterwards allowed even to enter an appearance for himself, but upon the condition of pleading to the merits and not in abatement. 3 Salk. 519. But within the system of laws which govern this State, this-bond need not now (whatever it may have heretofore been) be considered even as much as special bail was considered in England — -so far as appearance is concerned — In view of our change of policy effected by the act of the legislature, approved the 3d February, 1843, which abolished imprisonment in every civil action, either upon original, mesne or final process, except only “ in cases of fraud alleged by the plaintiff and supported by his affidavit, and also by the affidavit of some other disinterested and creditable person to the facts on which the allegation of fraud is founded.” Because the law of appearances, as established in England and brought to this State, had its orign in the plaintiff’s claims upon the defendant’s person, which it was the policy of English jurisprudence to make available to him through the instrumentality of an actual appearance in court, and from which claims upon his body the defendant could only extricate himself for the time by giving bail. But the plaintiff in this State, having no such claims upon the defendant’s body, except only in the specified cases supported in the manner pointed out in the statute; our present policy is as well satisfied, so far as the rights of the plaintiff are concerned, by placing the defendant in an attitude to have a judgment in per-sonam rendered against him, as if he had actually appeared in court by himself or his attorney, which, so far as the plaintiff’s rights are concerned, would be now an idle ceremony. And whether cases, which authorize the issuance of an attachment, be such cases of fraud as are contemplated by our new statute or not would be unnecessary to examine inasmuch as, if they were found to be such, the ordinary proceedings by attachment do not present them to the courts in a manner (that is, by the additional affidavit of a disinterested person) to come within the purview of the statute. Accordingly, when it is held, as it was by this court held in the case of Shields vs. Barden, 1 Eng. 459, that the execution of the bond, authorized by the 13th sec. of the statute of attachments, is such express notice of the pen-dency of the suit as will authorize a judgment against the defendant by default, upon his failure to “appear and answer upon the calling of the cause according to the practice of the court,” all that the plaintiff has any right to claim is secured to him, and he must be" prepared, as in other actions at law, to show himself in court in a manner to resist any lawful defence cither in abatement (if presented' in time) or in bar, if thus presented. But it has been objected that any construction of the 13th section, which would admit of pleading in abatement by the defendant, after the execution of the bond it authorizes, would operate “unjustly and oppressively upon the plaintiff.” How this can be shown it is difficult to conceive. If the plaintiff attempt to use this remedy and fail in his action because his case is not within its scope, he can only complain that the scope of the remedy was not sufficiently ample to embrace his case. If his case be within its scope, and he fails because of his own fraud or unskilfulness in presenting himself in court, he can only lament that he had not more integrity or more skill. And in either case, in the exercise of the rights of defence enjoyed in common by all defendants in our courts of law, if the plaintiff is defeated, no rights of his are invaded, for he had none in this remedy that the statute did not provide. Nor are his rights, in any substantial way, impaired by the substitution of the bond and security in the place of the property attached: for he seeks a judgment in personam against the defendant and captures his property to hold it pendente lite, with the intent ultimately to subject it to the payment of his demand. The defendant substitutes his bond and security in the place of the property, and at the same time, by that act, places himself in such an attitude that, if the plaintiff’s case is within the remedy ho has adopted and he has used the remedy in the manner fixed by law for its use, a judgment will be obtained against him, to be satisfied by the bond as amply as it would have been satisfied by subjecting the property. Is not this quid pro quo? Where then is the injustice and oppression upon the plaintiff ? But give this section the opposite construction, and it will not be difficult to conceive of, in its operation, a degree of injustice and oppression to the defendant, that could never have been designed by the legislature to have the sanction of law. We therefore hold that the execution of the bond, authorized by the 13th section, does not impair any of the defendant’s rights of defence, and that after its execution, he may defend the action either by plea in abatement interposed in apt time and in due form, or by plea in bar, in the same manner, in every respect, as if he had not executed the bond, and had suffered the property attached to remain in the hands of the sheriff. Therefore, inasmuch as the court below clearly erred in striking out the defendant’s pleas in abatement, let the judgment be reversed and the cause remanded to be proceeded in.